**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **TACORI ENTERPRISES,** | Case No. 1:05CV2241 |
| Plaintiff, | Judge O'Malley |
| vs. | |
| **REGO MANUFACTURING,** | |
| Defendant. | |

**REPLY MEMORANDUM IN SUPPORT OF MOTION OF PLAINTIFF
TACORI ENTERPRISES FOR PARTIAL SUMMARY JUDGMENT**

**I.      INTRODUCTION**

Plaintiff Tacori Enterprises ("Tacori") is the owner of a federal copyright registration for the HT 2229 ring design.  Based on the presumption of validity given to federal copyright registrations under 17 U.S.C. §410(c) and on the declarations of the two joint authors of HT 2229, Haig Tacorian, President of Tacori, and Garo Karounian, Owner of Anais Design, Inc. ("Anais"), Tacori moved for partial summary judgment to confirm that its copyright of HT 2229 is valid and enforceable.

The statutory presumption of validity shifts the burden to Defendant Rego Manufacturing ("Rego") to show that there was "such an overwhelming amount of evidence" of nonoriginality "that reasonable and fair minded men" could not have found the HT 2229 ring design to be original.  *Yurman Design, Inc. v. PAJ, Inc.,* 262 F.3d 101, 109 (2d Cir. 2001).  Rego fails to meet that burden in its Opposition to Tacori's Motion for Partial Summary Judgment.[1]  In fact, Rego does not even submit the declaration of its expert, Professor Stanley Lechtzin, or the

---

[1] Rego combines its Opposition to Tacori's Motion for Partial Summary Judgment with its own Motion for Summary Judgment.  Tacori's Reply Memorandum will only respond to those issues raised in Tacori's Motion -- the validity and enforceability of the HT 2229 copyright registration -- which can be found in Rego's Opposition.  For example, the trade dress issue raised by Rego will be addressed at a later time in Tacori's Opposition to Rego's Motion for Summary Judgment.

declaration of anyone else, to support its alleged claim that HT 2229 is not an original ring design.  Nor does Rego rebut or challenge the declarations of Mr. Tacorian and Mr. Karounian that they did not base HT 2229 on any other piece of jewelry.

It appears, by the lack of evidence provided by Rego, that Rego has abandoned its claim that the HT 2229 ring design is not original.  Instead, and in keeping with its habit of continually changing its theories of defense, Rego's Opposition[2] raises brand new (and equally flawed) arguments why the HT 2229 copyright is invalid.  Rego now claims, for the first time, that the assignment of the copyright from Anais to Tacori in 1999 is not valid under 17 U.S.C. §204(a) because it was not in writing until 2003.  Additionally, Rego now claims, for the first time, that Anais, not Tacori, is the sole author and owner of HT 2229.

Rego's new and novel theories are contrary to the facts, the law, and its own discovery responses, and should be rejected by the Court for the following reasons:

1. Since Rego failed to articulate these new theories in its responses to contention interrogatories, Rego should be barred from raising it in its Opposition.  *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion . . ."); *Emilia Guadagno v. Leviathan Assoc., National Life of Vermont*, 950 F. Supp 1258, 1261 (S.D.N.Y. 1997)(a contention interrogatory response is a judicial admission binding on the party making them that may not be controverted at trial).

2. Even if Rego were permitted to raise these new arguments at this late stage of the case, Rego lacks standing to challenge the validity of the copyright assignment from Anais to Tacori in an attempt to avoid liability.  Since Anais and Tacori each agree that Tacori owns the copyright for the HT 2229 ring, Rego's argument is barred.  *See Eden Toys, Inc. v. Florelee*

---

[2] Rego moved, under Rule 56(f) of the Fed. R. Civ. P., for a continuance to file its opposition to allow it time to depose Tacori's expert witness, Sarkis Nourian.  Even though Mr. Nourian was deposed on January 11, 2008, Rego filed its Opposition on January 3, 2008, 8 days **before** the deposition.  It is disingenuous for Rego to claim that it could not oppose Tacori's Motion for Summary Judgment until after Mr. Nourian's deposition when it did exactly the reverse.  The Court should not countenance Rego's gamesmanship and waste of judicial resources.

*Undergarment Co., Inc.*, 697 F.2d 27, 36 (2d Cir. 1982) ("we agree that where there is no dispute between the copyright owner and the transferee about the status of the copyright, it would be unusual and unwarranted to permit a third party infringer to invoke section 204(a) to avoid a suit for copyright infringement").

3. Even if Rego could challenge Anais' written assignment of copyrights to Tacori, Rego's legal analysis is misguided. The written copyright assignment in 2003 confirmed an oral agreement to assign the copyrights in 1999. It is well settled that the writing requirement of 17 U.S.C. §204(a) is satisfied by an oral assignment later confirmed by a writing memorializing the transfer. *See Billy-Bob Teeth, Inc. v. Novelty, Inc.*, 329 F.3d 586, 591 (7th Cir. 2003) (if the owner of a copyright makes an oral grant that is subsequently confirmed in writing, the writing validates the grant *ab initio* as of the time of the oral grant).

4. Finally, Anais and Tacori are the two authors of HT 2229 because Mr. Tacorian (as a work made for hire for Tacori) and Mr. Karounian (as a work made for hire for Anais)[3] collaborated on the design of HT 2229 and each intended that Tacori and Anais would be the joint authors of HT 2229. Even if Anais were the sole author of HT 2229, Anais properly assigned its copyright ownership to Tacori making Tacori the valid owner of HT 2229.

## II. ARGUMENT

### A. The HT 2229 Ring Is An Original Ring Design

The HT 2229 ring design obtained a federal copyright registration in 2001. This registration certificate establishes a statutory presumption that HT 2229 is an original ring design. *Boisson v. Banian, Ltd.*, 273 F. 3d 262, 268 (2d Cir. 2001). In its Motion for Partial Summary Judgment, Tacori submitted the declarations of Mr. Tacorian and Mr. Karounian describing the evolution of the crescent-shaped design in HT 2229 which resulted from the

---

[3] Rego is under the misapprehension that the agreement between Tacori and Anais was a work made for hire. (Opposition, pp. 14-15). This is not the case. Rather, under 17 U.S.C. §101(1), Mr. Tacorian's contribution on behalf of Tacori, and Mr. Karounian's contribution on behalf of Anais, was a work made for hire because it was "a work prepared by an employee within the scope of his or her employment." The Copyright Assignment Agreement between Tacori and Anais was merely an assignment of Anais' copyright interest in certain jewelry designs to Tacori.

reversal of the heart-shaped design.[4]  Declaration of Haig Tacorian In Support Of Motion For Partial Summary Judgment ("Tacorian Dec."), ¶¶ 3-4; Declaration of Garo Karounian In Support Of Motion For Partial Summary Judgment ("Karounian Dec."), ¶¶ 3-9.  In addition, Mr. Tacorian and Mr. Karounian declared that they did not base their design of HT 2229 on any other ring design and that they were not aware of any other ring design that contained crescents in the shank of the ring.  Tacorian Dec., ¶ 6; Karounian Dec., ¶ 11.

Rego's Opposition does not meet its burden of showing that there was "such an overwhelming amount of evidence" of nonoriginality "that reasonable and fair minded men" could not have found the HT 2229 ring design to be original.  *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 109 (2nd Cir. 2001).  In fact, Rego does not submit the declaration of its expert, Professor Lechtzin, or anyone else to support its claim that HT 2229 is not original.  Rather, Rego's Opposition merely refers to and restates Professor Lechtzin's expert report and alleged conclusions.[5]  Even assuming that a proper foundation was laid for Prof. Lechtzin's expert report and conclusions without his declaration, Rego does not identify any piece of jewelry created before September 1999 that contains a jewelry design substantially similar to HT 2229.  In fact, not one ring identified by Rego contains crescents in the side of the shank of the ring.

Rather, Rego's Opposition merely speculates (without any support) that HT 2229 is derivative of five different pieces of jewelry.  Yet, not one of those rings contains crescents in the side of the shank of the ring or looks like HT 2229.  First, Rego refers to a 4th Century BC Greek design which claims to have crescents. (Opposition, p. 7).  In fact, the ring is described as having "open-work leaves" not crescents.  This ring does not look like HT 2229.  *See* Exhibit A for comparison between that ring and HT 2229.

---

[4]  In its Opposition, Rego claims that "there is some confusion as to whether design 2229 was originally designed with heart shapes in the shank as opposed to crescent shapes, of which the present design is possessed." Opposition, p. 3.  There should be no confusion since Mr. Karounian testified at his deposition that the heart-shaped design was model number HT 2228, not HT 2229.  Karounian Depo., pp. 108, line 23 to 109, line 1. (Attached as Exhibit N).

[5]  *See* Opposition, pp. 7 ("Stanley Lechtzin has noted in his report . . . "); 8 ("Professor Lechtzin concluded that no new design concept was utilized in the design of the Tacori rings"); 20 ("Professor Lechtzin concludes that the inspiration for Tacori's design came from an earlier work").

Second, Rego refers to a ring depicted in *A World Of Rings -- Africa, Asia, America,* which Rego describes as "not nearly as close a match to the "Tacori Look" as the previous example." (*Id.*).  Again, this ring does not contain crescents in the side of the shank of the ring or look like HT 2229.  *See* Exhibit B for comparison between that ring and HT 2229.

Third, Rego refers to a ring the head of which Rego claims "closely resembles the shank of Tacori's ring design." (*Id.*)  Rego thus admits that this ring, a picture of which is in *Rings -- Symbols of Wealth, Power and Affection*, does not contain crescents on the side of the shank of the ring or look like HT 2229.  And, without any support, Rego claims that "[i]t would appear that simply by converting the head of the ring into the ring itself would produce the 'Tacori Look.'" (*Id.*)  *See* Exhibit C for comparison between that ring and HT 2229.

Fourth, Rego refers to the picture of a ring in *Art Deco Jewelry 1920-1940* as having crescent shapes; however, that ring does not contain crescents in the side of the shank of the ring and looks nothing like HT 2229.  *See* Exhibit D for comparison between that ring and HT 2229.

Fifth, Rego refers to bracelets which Rego speculates (again, without support) that "it easily appears that her jewelry was the prototype for the design that Tacori submitted to the Copyright Office.  One cannot look at this artist's work and not conclude that the Tacori rings are derivatives of the Untracht design." (Opposition, p. 8).  Yet these bracelets do not look like HT 2229.  *See* Exhibit E for comparison between that bracelet and HT 2229.

These five pieces of jewelry do not constitute "an overwhelming amount of evidence" of nonoriginality because the five pieces of jewelry are not substantially similar to HT 2229.  Yet, even assuming that these five pieces of jewelry are substantially similar to HT 2229, there is no evidence that Mr. Tacorian or Mr. Karounian had ever seen these pieces of jewelry before designing HT 2229.  In fact, the evidence is to the contrary.  *See* Tacorian Dec., ¶ 9; Karounian Dec., ¶ 12.  Thus, neither of them could have based the design of HT 2229 on those pieces of jewelry.  *See Feist Publications v. Rural Telephone Service Co.,* 499 U.S. 340, 345-46, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991) ("Originality does not signify novelty; a work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result

of copying").

Finally, Rego does not (and cannot) dispute the obvious fact that even if Messrs. Tacorian and Karounian had seen those pieces of jewelry, it would have taken some "creative spark" to have turned those earlier designs into HT 2229. Such a "creative spark" would have been sufficient to make HT 2229 original and copyrightable. *See Weindling Intl, Corp. v. Kobi Katz, Inc.,* 56 U.S.P.Q. 2d 1763 *11 (S.D.N.Y. 2000)("even if the creative spark behind a commercial jewelry design is more like a flickering match than a bolt of lightening, it nonetheless is entitled to copyright protection").[6]

For these reasons, summary judgment is appropriate on the originality of HT 2229.

### B. Rego Is Barred From Advancing Any New Theories Not Raised In Its Response To Contention Interrogatories

In its Opposition, Rego claims for the first time that the assignment of the copyright from Anais to Tacori in 1999 is not valid under 17 U.S.C. §204(a) because it was not in writing until 2003. (Opposition, pp. 4-6, 16-18). Additionally, Rego now claims, for the first time, that Anais, not Tacori, is the sole author and owner of HT 2229. (Opposition, pp. 2, 11-16, 19-20). Rego should be barred from raising these new theories of copyright invalidity because they are contrary to Rego's prior responses to contention interrogatories. *See Wechsler v. Hunt Health Sys.,* 1999 U.S. Dist. LEXIS 13216 at *5 (S.D.N.Y. 1997) (responses to contention interrogatories are treated as "judicial admissions" that estop the responding party from asserting positions omitted or different from those responses); *CPC International Inc. v. Archer Daniels Midland Company*, 831 F. Supp. 1091, 1102-1103 (D. Del 1993) (holding that defendant waived the right to rely on a particular defenses to a patent infringement claim by failing to identify them in response to plaintiff's contention interrogatory, failing to supplement its interrogatory response, and failing include them in the draft pretrial order); *see also Nike Inc. v. Wolverine World Wide, Inc.,* 43 F. 3d 644, 649 (Fed Cir. 1994) (affirming district court's order barring

---

[6] Unreported decisions are attached as Exhibit J.

plaintiff's claim under the doctrine of equivalents where the plaintiff had not disclosed the factual basis for the claim during discovery).

On January 23, 2006, Tacori propounded Interrogatory No. 9 asking Rego to "[s]tate all facts that support your contention that Tacori's copyrights are invalid." *See* Exhibit F.  This contention interrogatory was first responded to by Rego on March 27, 2006.  At that time, Rego stated that "Defendant does not desire to contest the validity of Tacori's copyrights." *See* Exhibit G.  Since March 2006, Rego has twice amended its response to Interrogatory No. 9, with each response reflecting a new defense by Rego to Tacori's copyright claim.

On May 18, 2006, Rego amended its response to Interrogatory No. 9 claiming that "Plaintiff was not the first to design or introduce the unique rings because Beverlly Jewellry of Hong Kong was the first to design said rings, and market and distribute said rings in the United States, and therefore Beverlly Jewellry was the first in use of said rings." *See* Exhibit H.  After Rego admitted that the information it received from Beverlly was not reliable, Rego filed its Second Amended Response to Interrogatory No. 9 on March 5, 2007.  At that time, Rego stated:

> Tacori was not the first to design, introduce into the market, manufacture, distribute or duplicate the allegedly unique rings described in Tacori's Complaint because the rings were in the public domain at the time Tacori alleges to have created the unique rings, the design of the rings was already generic and commonplace, and were being sold in the marketplace worldwide by many different manufacturers. . . . [T]he alleged designs were not originated by Tacori and have been commonly available from a myriad of other jewelry manufacturers and wholesalers both prior to and subsequent to the time that Tacori claims to have originated and copyrighted the designs . . .

*See* Exhibit I.  Rego has not amended this response.  Rego has not, and has never, claimed that Tacori's copyrights are invalid based on the faulty assignment of the copyright by the "true author" to Tacori.

Rego has the duty to respond to contention interrogatories truthfully and completely, in a clear and precise manner.  *Weiss v. Chrysler Motors Corp.*, 515 F.2d 449, 456 (2d Cir. 1975).  And, Rego must be bound by those responses.  *See Emilia Guadagno v. Leviathan Assoc.,*

*National Life of Vermont*, 950 F. Supp 1258, 1261 (S.D.N.Y. 1997)(a contention interrogatory response is a judicial admission binding on the party making them that may not be controverted at trial).

Since Rego failed to give Tacori notice of its new theories of copyright invalidity in its response to Tacori's contention Interrogatory No. 9, Rego should be barred from advancing its new defenses in its opposition to Tacori's Motion for Partial Summary Judgment. *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless").[7]

> **C. Rego Lacks Standing to Challenge the Validity of the Copyright Assignment From Anais to Tacori, or the Joint Authorship of HT 2229, in an Attempt to Avoid Liability.**

Anais and Tacori each agree that Anais assigned its copyright interest in HT 2229 to Tacori and that Tacori is the only owner of the copyright. Tacorian Dec., ¶¶ 2, 8; Karounian Dec., ¶ 2. Furthermore, Anais and Tacori each agree that Mr. Tacorian and Mr. Karounian jointly created the design for HT 2229. Tacorian Dec., ¶ 4; Karounian Dec., ¶ 9; Supplemental Declaration of Haig Tacorian In Support Of Motion For Partial Summary Judgment ("Supplemental Tacorian Dec.", attached as Exhibit K), ¶¶ 2-3; Supplemental Declaration of Garo Karounian In Support Of Motion For Partial Summary Judgment ("Supplemental Karounian Dec.", attached as Exhibit L), ¶¶ 2-3.

Since there is no dispute between Anais and Tacori on these issues, Rego does not have standing to challenge the validity of the assignment from Anais to Tacori in an attempt to avoid liability. *See Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*, 697 F.2d 27, 36 (2d Cir. 1982) ("we agree that where there is no dispute between the copyright owner and the transferee about the status of the copyright, it would be unusual and unwarranted to permit a third party infringer

---

[7] Rego offers no "substantial justification" for its failure to disclose its new theories in any amended response to contention Interrogatory No. 9 especially since Rego, in the past, has filed numerous amendments to its initial interrogatory response.

to invoke section 204(a) to avoid a suit for copyright infringement"); *Imperial Residential Design, Inc. v. Palms Development Group, Inc.*, 70 F.3d 96, 99 (11th Cir. 1995) (same) Similarly, Rego should not be permitted to attempt to avoid liability for copyright infringement merely by claiming that Messrs. Tacorian and Karounian are not joint authors when no such dispute actually exists between them on that issue.

      D.      <u>**The Writing Requirement of 17 U.S.C. §204(a) is Satisfied by an Oral Assignment Later Confirmed by a Writing Memorializing the Transfer.**</u>

Even if Rego were permitted to raise a new theory at this late stage of the litigation that contradicts its prior contention interrogatory responses, and if Rego had standing to make this claim, Rego's argument is contrary to the law.

Rego claims that Tacori had no right to apply for copyright registration until December 23, 2003, the date that Mr. Karounian executed a written Assignment Agreement conferring to Tacori the ownership of copyright rights that Anais owned in certain jewelry. (Opposition, pp. 10-18). Rego is mistaken. While it is true that under 17 U.S.C. §204(a) copyright ownership can only be conveyed by a writing signed by the owner of the copyright, it is well settled that if the owner of a copyright makes an oral grant that is subsequently confirmed in writing, the writing validates the grant *ab initio* as of the time of the oral grant. *Valente-Kritzer Video v. Pinckney*, 881 F.2d 772, 775 (9th Cir. 1989), *cert. denied*, 493 U.S. 1062 (1990); *Billy-Bob Teeth, Inc. v. Novelty, Inc.*, 329 F.3d 586, 591 (7th Cir. 2003); *X-IT Prods., LLC v. Walter Kidde Portable Equip., Inc.*, 155 F. Supp. 2d 577, 603-04 (E.D. Va. 2001); *Great S. Homes, Inc. v. Johnson & Thompson Realtors*, 797 F. Supp. 609, 612 (M.D. Tenn. 1992); *Imperial Residential Design, Inc. v. Palms Dev. Group, Inc.*, 29 F.3d 96, 99 (11th Cir. 1995); *Arthur Rutenberg Homes, Inc. v. Drew Homes, Inc.*, 29 F.3d 1529, 1531-32 (11th Cir. 1994). Such a writing can occur **after the assignee registers the copyright** in its own name. *Arthur Rutenberg Homes*, 29 F.3d at 1531-32. It can even occur after the filing of a complaint. *Great S. Homes*, 797 F. Supp. at 612. One court even suggested that the writing could be signed at the time of a motion for summary judgment. *Niemi v. Am. Axle Mfg. & Holding, Inc.*, 2006 U.S. Dist. LEXIS 82156, at *7-9 (D.

Mich. 2006).

There is no dispute that Mr. Karounian, the owner of Anais, orally assigned the copyright of HT 2229 to Tacori at the time it was developed in 1999. (Karounian Decl. ¶¶ 2, 3; Tacorian Decl. ¶¶ 2, 3.) Mr. Karounian, on behalf of Anais, then memorialized this assignment in writing in December 2003. (Rego's Opposition. Ex. 2.) This writing therefore effectuates a transfer of ownership to Tacori **as of 1999**, the time when the oral grant was made.

Tacori's registration of HT 2229 is thus valid and proper under 17 U.S.C. §408(a), and a sufficient basis for Tacori to bring this suit against Rego. Similarly, Rego cannot claim that Tacori made any misrepresentations to the Copyright Office since Tacori **was** the proper owner of HT 2229. Nor can Rego make the claim that Tacori's copyright claims are barred by the doctrine of laches (Opposition, pp. 19-20) because Tacori has enforced its rights against hundreds of infringers. Tacorian Deposition, pp. 56, line 21 to 57, line 2. (Attached as Exhibit M.)[8]

### E. Tacori and Anais are Joint Authors of HT 2229

Rego also makes the claim that Anais, not Tacori, is the only author of HT 2229. Even assuming that this were true (which, as shown below, it is not), it does not help Rego's claim. If Anais were the only author of HT 2229, its rights were transferred to Tacori in 1999. Thus, regardless of whether Anais was the sole author, or joint author with Tacori, the copyright of HT 2229 is properly owned by Tacori.

Nevertheless, the evidence is not in dispute that Mr. Karounian created an initial design with crescents in the side of the shank of the ring. Karounian Dec., ¶¶ 3-8.[9] Furthermore, there

---

[8] Exhibit M is an excerpt from a deposition marked "Confidential". This exhibit will be filed under seal per the Stipulation and Protective Order Regarding Confidential Information. (Dkt. 27-2).

[9] Rego misstates the record in its Opposition when it stated that "Mr. Karounian claims to have been the author of that design, not Tacori. (Karounian Aff. at ¶¶ 3-9 (Dkt 87-4); Tacorian Dep. a P. 72 L. 13 - P. 73 L. 12; Karounian Dep. at P. 20 L 6-19)." Opposition, p. 2. First, Mr. Karounian's declaration never makes a claim that he, not Tacori, was the author of HT 2229. Second, the citation to Mr. Tacorian's deposition does not support Rego's claim that Mr. Karounian is the author of HT 2229. In fact, Mr. Tacorian testified at his deposition that "*we* made changes" (Tacorian Dep., p. 73, lines 22-23) (emphasis added) and "[t]he second ring we created were the crescents which looked good to me with a few changes. We inserted diamonds on the crescents." (Tacorian Dep., p. 74, lines 3-6). Finally, the cite to Mr. Karounian's deposition refers to the designs of Balian Jewelry and has nothing to do

is no dispute that Mr. Karounian and Mr. Tacorian collaborated in refining the initial design by "making the ring thinner, adding a pave diamond setting to each crescent shape and adding mill grain."  Karounian Dec., ¶ 9; Tacorian Dec., ¶ 4.  Finally, Messrs. Karounian and Tacorian each declare that they were jointly responsible for the creation and design of HT 2229 and intended that Tacori and Anais would be the joint authors of HT 2229.  Supplemental Tacorian Dec., ¶¶ 2-3; Supplemental Karounian Dec., ¶¶ 2-3.

A joint work is a work "prepared by two or more authors with the intention that their contributions be merged into inseparable or independent parts of a unitary whole."  17 U.S.C. § 101.  Courts hold that each putative joint author must intend to be a joint author in order to give rise to such a relationship. *Thomson v. Larson*, 147 F.3d 195, 202 & n. 20 (2d Cir. 1998).  Since Tacori and Anais each intended to be joint authors of HT 2229, they are.[10]

In addition to requiring objective intent, Courts also examine the subjective contribution by each purported author.  There are two competing tests for determining whether a contribution rises to the level of joint authorship.  One test is the "*de minimis*" test, set forth by Professor Nimmer, and the other test is the "copyrightable subject matter test," set forth by Professor Goldstein.  *See generally Erickson v. Trinity Theatre, Inc.*, 13 F.3d 1061, 1069 (7th Cir. 1994) (describing the two tests).  The "*de minimis*" test requires only that each putative joint author make more than a *de minimis* contribution and that the final work as a whole be copyrightable. *Id.*  The "copyrightable subject matter" test, by contrast, requires that each author's contribution be separately copyrightable.  *Id.*  The Sixth Circuit has not yet ruled on which test is to be applied in this circuit.  *Tang v. Putress*, 2007 U.S. Dist. LEXIS 74565, at *12 (E.D. Mich. 2007).

---

with the design of HT 2229.

[10]  In determining whether objective evidence exists for such intent, the courts consider:  (1) how the parties regarded themselves in relation to the work; (2) the putative joint author's decision making authority; (3) credit given to the putative joint author; (4) written agreements with third parties; (5) and any other additional evidence deemed pertinent by the court.  *Thomson,* at 202-05.  The declarations of Messrs. Tacorian and Karounian meet these criteria.  For example, both have stated that Mr. Karounian began the initial design, at which point he conferred with Mr. Tacorian and then followed Mr. Tacorian's instructions for modifying the design, thus indicating that they both had decision making authority.  Moreover, both Mr. Tacorian and Mr. Karounian have signed declarations in this case indicating that they regard themselves as having both created the work at issue, thus giving them both credit for authorship.  Rego, on the other hand, has provided no contradictory evidence on this issue.

Nevertheless, Tacori and Anais would be considered joint authors under either test.

Under the "*de minimis*" test, each joint author need only make more than a *de minimis* contribution, and the final work must be copyrightable as a whole. *Gaiman v. McFarlane*, 360 F.3d 644, 658-59 (7th Cir. 2004). In *Gaiman*, the Seventh Circuit acknowledge that even though the "separately copyrightable" test may be appropriate in general cases, such reasoning does not necessarily apply in cases where each author's contribution could not stand alone because of the nature of the particular creative process that had produced it. *Id.* at 659. Applying the "separately copyrightable" test in such cases could even paradoxically result in a work that was copyrightable as a whole but in which neither author could claim ownership because neither author's individual contribution would be separately copyrightable. *Id.* As an example, the Seventh Circuit discusses the case where two professors collaborate on an academic article. *Id.* One professor is brilliant but cannot write, and the other is an excellent writer with only commonplace ideas. *Id.* When the two prepare the article, one would contribute ideas, which are not separately copyrightable, and the other the prose, which is only serving as an envelope for the ideas. *Id.* Under the "separately copyrightable" test, only the writer would be the author, and only he would own the copyright. *Id.* The "*de minimis*" test rejects such inequitable results and instead dictates that the parties clear intent to be joint authors "should be enough to constitute them joint authors within the meaning of 17 U.S.C. § 201(a)." *Id.*

In the instant case, Mr. Tacorian provided creative ideas to Mr. Karounian's initial design. They worked together and collaborated on the final design of HT 2229. Given this collaboration, to determine Mr. Tacorian's authorship in the work would, as the Seventh Circuit stated, "be peeling the onion until it disappeared." *Id.* As such, under the "*de minimis*" test Tacori and Anais should be considered joint authors of HT 2229.

Tacori and Anais are also joint authors under the "separately copyrightable" test. Under that test, each purported joint author's contribution to a work must be separately copyrightable. *Erickson*, 13 F.3d at 1069. Here, while Mr. Karounian developed the basic design for the ring, Mr. Tacorian and Mr. Karounian together added additional elements that would be copyrightable

in themselves. For example, they both refined the ring design by making it thinner, by adding a pave diamond setting to each crescent shape, and by adding mill grain. (Tacorian Dec., ¶ 4; Karounian Dec., ¶ 9.) These design elements together in themselves have enough of the minimal "creative spark" required for a copyrightable work. Since Messrs. Tacorian and Karounian both made a contribution to the design of HT 2229 that was copyrightable, they are also joint authors under the "separately copyrightable" test,

### F. Errors in the Copyright Registration of HT 2229 Do Not Invalidate the Copyright

When Tacori filed its initial copyright registration for HT 2229, it made a number of unintentional errors. First, it did not list Anais as a joint author. Second, it did not identify that Anais transferred ownership of the copyright to Tacori by assignment. And third, it mistakenly listed 2000 as the date of creation. (Tacorian Dec., ¶ 8). These mistakes were corrected in Supplementary Registrations.[11] *See* 37 C.F.R. §201.5(b)(2) (Supplementary registration is appropriate to identify a co-author or to correct information in the basic registration).

In order for Tacori's errors to invalidate the copyright, it must be shown that Tacori willfully misstated a fact that, if known, would have caused the Copyright Office to reject the application. *Eckes v. Card Prices Update*, 736 F.2d 859, 861-62 (2d Cir. 1984). *See Advisers, Inc. v. Wiesen-Hart, Inc.*, 238 F.2d 706, 708 (6th Cir. 1956) ("an innocent misstatement or a clerical error in the affidavit and certificate of registration unaccompanied by fraud or intent to extend the statutory period of copyright protection, does not invalidate the copyright nor is it thereby rendered incapable of supporting an infringement action"); *Sebring Pottery Co. v. Stuebenville Potter Co.*, 9 F. Supp. 383 (N.D. Ohio 1932) (wrong name and date did not affect suit). A party seeking to prove such fraudulent intent bears a "heavy burden" of proof. *E.g.*, *Lennon v. Seaman*, 84 F. Supp. 2d 522, 525 (S.D.N.Y. 2000).

---

[11] Rego claims that the Supplementary Registration on December 29, 2003 informed the Copyright Office that HT 2229 "was a work for hire and that the true author of the work was Anais Designs Inc." Opposition, pp. 5-6. Again, Rego is mistaken. The Supplementary Registration identified Anais as an **additional** author. Furthermore, the Supplementary Registration correctly stated that the contribution by Anais was a work made for hire (since the work

As such, the courts have taken an extremely liberal approach with respect to erroneous registrations and have forgiven all manners of errors and omissions. *See, e.g.*, *Testa v. Janssen*, 492 F. Supp. 198, 200-01 (W.D. Pa. 1980) (misstatement as to identity of the author); *Urantia Found. v. Burton*, 210 U.S.P.Q. 217 (W.D. Mich. 1980) (same); *Dealer Advertising Dev., Inc. v. Barbara Allan Fin. Advertising, Inc.*, 209 U.S.P.Q. 1003 (W.D. Mich. 1979) (misstatement as to identity of the copyright claimant); *Campbell v. Wireback*, 269 F. 372, 375 (4th Cir. 1920) (failure to fill out portion of certificate).

There is no evidence that Tacori made errors in its initial registration with a fraudulent intent. Nor is there any evidence to suggest that the Copyright Office would have rejected Tacori's registration had it known of Tacori's supposed "errors." In fact, Tacori has previously attempted to clarify the circumstances surrounding the work at issue and has even supplemented its registration with additional information. (Tacorian Dec., ¶ 8.) Since Rego has offered no evidence as to fraudulent intent, Tacori's "errors" have no impact on the validity of Tacori's registration and no impact on Tacori's right to pursue this litigation.

### III.   CONCLUSION

For the reasons set forth above, and Tacori's Memorandum in Support of its Motion for Partial Summary Judgment, Tacori request that this Court grant its motion for summary judgment and find, as a matter of law, that Copyright Registration No. VA 1-120-166 (also known as HT 2229 Tacori "Crescent Silhouette" Ring Design) is valid and enforceable.

---

was done by Mr. Karounian).

DATED:  January 22, 2008  Respectfully submitted,

By      /s/  Samer M. Musallam
Robert F. Ware  (0055515)
   Rob.Ware@ThompsonHine.com
Samer M. Musallam (0078472)
   Samer.Mussallam@ThompsonHine.com
**Thompson Hine LLP**
3900 Key Center, 127 Public Square
Cleveland, Ohio  44114-1291
Phone:  216.566.5500
Fax:  216.566.5800

Howard A. Kroll (Admitted *pro hac vice*)
   Howard. Kroll@cph.com
**Christie, Parker & Hale, LLP**
350 West Colorado Blvd., Suite 500
Post Office Box 7068
Pasadena, California 91109-7068
Phone:  626.683.4527
Fax:  626.577.8800

*Attorneys for Plaintiff Tacori Enterprises*

## CERTIFICATE OF SERVICE

I hereby certify that that the foregoing ***Reply Memorandum in Support of Motion of Plaintiff Tacori Enterprises for Partial Summary Judgment*** was filed electronically on January 22, 2008.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's System.

/s/ Samer M. Musallam

*One of the Attorneys for Plaintiff Tacori Enterprises*