**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **TACORI ENTERPRISES,** | : | **Case No. 1:05cv2241** |
| | : | |
| **Plaintiff,** | : | **JUDGE O'MALLEY** |
| | : | |
| v. | : | |
| | : | |
| **REGO MANUFACTURING,** | : | <u>**OPINION AND ORDER**</u> |
| | : | |
| **Defendant.** | : | |

Before the Court are two filings:  (1) the *Motion of Plaintiff Tacori Enterprises for Partial Summary Judgment* (Doc. 87); and (2) *Defendant Rego Manufacturing's Motion for Summary Judgment* (Doc. 93).  For the reasons articulated below, Plaintiff Tacori Enterprise's motion for partial summary judgment is <u>**GRANTED**</u>, and Defendant Rego Manufacturing's motion for summary judgment is <u>**DENIED**</u>.

## I.  <u>BACKGROUND</u>

Plaintiff Tacori Enterprises ("Tacori") has brought suit against Defendant Rego Manufacturing ("Rego"), alleging five claims in its Amended Complaint:  (1) federal copyright infringement; (2) federal contributory copyright infringement; (3) federal trade dress infringement; (4) unfair competition under Ohio law; and (5) violations of the Ohio Deceptive Trade Practices Act (Doc. 22).  Tacori's federal and state claims arise from Rego's sale of various engagement and wedding rings in February 2004 that, according to Tacori, infringe Tacori's copyrighted ring design and/or are confusingly similar to rings that Tacori designs and manufactures.  Generally, Rego has taken the position that Tacori has no intellectual property rights in the contested designs.

The parties have now filed cross-motions for summary judgment.  Tacori moves for partial summary judgment on the issue of the validity and enforceability of one of its federally registered copyrights – Copyright Registration No. VA 1-120-166 (also known as the HT 2229 Tacori "Crescent Silhouette" Ring Design) (the "HT 2229 Design").  Rego opposes Tacori's motion and moves for an order granting it summary judgment on Tacori's federal copyright and trade dress claims.  Specifically, Rego seeks an order that:  (1) Tacori does not possess a validly obtained registration from the Copyright Office for the HT 2229 Design and its progeny; (2) Tacori does not have standing to bring a Copyright Infringement Action; (3) Tacori is barred from seeking statutory damages and attorneys' fees under the Copyright Act; and (4) Tacori does not possess a recognizable trademark upon which Rego infringed.

In support of their cross-motions, Tacori and Rego have engaged in extensive briefing.  Tacori has filed:  (1) a memorandum in support of its motion for partial summary judgment (Doc. 87); (2) a reply memorandum in support of its motion for partial summary judgment (Doc. 102); (3) an opposition to Rego's motion for summary judgment (Doc. 106); (4) a sur-reply to Rego's motion for summary judgment (Doc. 117); and (5) a supplement to briefing on the motions for summary judgment (Doc. 136).  Rego has filed:  (1) a memorandum in support of its motion for summary judgment and in opposition to Tacori's motion for partial summary judgment (Doc. 93);

(2) a reply memorandum in support of its motion for summary judgment (Doc. 109); (3) a response to Tacori's sur-reply (Doc. 118); and (4) a reply to Tacori's supplemental briefing (Doc. 139).[1]

The most recent round of briefing was generated in response to an opinion issued by United States District Judge Gary Allen Feess on August 20, 2008 in two consolidated Central District of California cases involving Tacori that addressed virtually the same issues presented by the motions in this case.  Doc. 136-6 (*Tacori Enterprises v. Beverly Jewellery Co., Ltd.*, Case No. 06-5170 and *Tacori Enterprises v. Pink Diamond*, Case No. 07-3939) (the "California Opinion").   In the California Opinion, Judge Feess:  (1) granted Tacori's motion for partial summary judgment as to the validity of the copyright registration of the HT 2229 Design; and (2) denied the defendants' motions for summary judgment as to Tacori's copyright and trade dress claims.  While the Court recognizes that the California Opinion did not involve Rego and is not binding, and that Rego has indicated that some of its arguments were not presented by the defendants in California, the Court nevertheless is persuaded in part by the well-reasoned analysis in the California Opinion and will refer to that analysis in this Opinion and Order where applicable.

---

[1]  In the interim, Rego also filed a Rule 56(f) motion for a continuance of its deadline to file an opposition to Tacori's motion for partial summary judgment (Doc. 90).  Rego requested a continuance to allow it time to depose Tacori's expert witness, Sarkis Nourian.  After briefing the issue, the Court granted Rego's motion in part in an Order dated January 4, 2008 (Doc. 94). Rego, however, filed its motion for summary judgment eight days before Nourian was scheduled to be deposed.

## II. STATEMENT OF FACTS

**A.      Facts Related to Tacori's Copyright of the HT 2229 Design**

      **1.      Oral Agreement Between Tacorian and Karounian**

Haig Tacorian, President of Tacori, and Garo Karounian,[2] currently the sole shareholder of Anais Designs, Inc.,[3] have worked together to create and develop ring designs since approximately 1994.  Doc. 87-3 (Tacorian Decl. at ¶ 2); Doc. 87-4 (Karounian Decl. at ¶ 2).  At an unspecified date at the beginning of their working relationship, Tacorian and Karounian reached an oral agreement. *Id.*; Karounian Dep. 33:19-21, 103:17-20 (July 16, 2007) ("Karounian Dep.").  Karounian agreed that Tacori would own any ring designs created and developed by him and Tacorian.  Doc. 87-3 (Tacorian Decl. at ¶ 2); Doc. 87-4 (Karounian Decl. at ¶ 2).   In exchange, Tacorian agreed that Karounian's company, then called Anais Fine Jewelry Mfg., would be the manufacturer of these Tacori ring designs.  *Id.*  At no time during this working relationship was Karounian ever an employee of Tacori.  Karounian Dep. 91:16-21.

---

    [2]  The parties spell "Karounian" differently; Tacori spells his name "Karounian," and Rego spells his name "Kourounian."  For consistency, the Court will use "Karounian" throughout this Opinion and Order.

    [3]  As discussed throughout the Opinion and Order, Rego notes in its reply brief that Anais Designs, Inc. was not incorporated until May 29, 2003.  Doc 109-3 (Corporate Information for Anais Designs, Inc.); Doc. 117-2 (Karounian Second Supplemental Decl. at ¶ 4).  Karounian, however, states in a Declaration that he previously was the owner of Anais Fine Jewelry Mfg., a California sole proprietorship, and that in his mind, he treated Anais Fine Jewelry Mfg. and Anais Designs, Inc. as the same company.  Doc. 117-2 (Karounian Second Supplemental Decl. at ¶¶ 3-4).  Further, Karounian states that Anais Designs, Inc. is the successor-in-interest to Anais Fine Jewelry Mfg. and assumed all of the assets and liabilities of Anais Fine Jewelry Mfg.  *Id.* at ¶ 4.  Nevertheless, Rego makes much of the fact that Anais Designs, Inc. did not exist prior to its incorporation in 2003.

4

### 2.    Creation of the HT 2229 Design

Although there are no records reflecting the actual date of design, Tacorian and Karounian state that the HT 2229 Design was created and developed in 1999.  Doc. 87-3 (Tacorian Decl. at ¶¶ 3, 7 ); Doc. 87-4 (Karounian Decl. at ¶¶ 3, 10)).  That summer, Karounian was experimenting with a table-top lathe and two brass rods.  Doc. 87-4 (Karounian Decl. at ¶ 3).  Karounian's experimentation initially yielded a ring with a heart-shaped design; then, upon a fortuitous reversal of the heart design, Karounian created a ring with crescent shapes that ultimately became the HT 2229 Design.  *Id.* at ¶¶ 3-10; Doc. 87-3 (Tacorian Decl. at ¶¶ 3-5); Karounian Dep. 109:18-112:22.

Tacorian and Karounian describe the design process as follows.  First, Karounian bored approximately 22 millimeters from the inside of one of the brass rods.[4]  Doc. 87-4 (Karounian Decl. at ¶ 3).  Karounian then grinded the outside of the second brass rod (to approximately 20 millimeters) so that it was able to fit inside the first brass rod.  *Id.* at ¶ 4.  Karounian next bored approximately 17 millimeters from the inside of the grinded second brass rod.  *Id.* at ¶ 5.  Then, Karounian cut both rods and was left with an outer ring (made from the first brass rod) and an inner ring (made from the second brass rod) that could be fit into the outer ring.  *Id.* at ¶ 6.  Using a hand grinder, Karounian carved the top portion of a heart on the outer ring and the v-shape part of a heart on the inner ring, so that when the inner ring was fit into the outer ring, heart shapes were seen.  *Id.* at ¶ 7.  Karounian then showed this design with heart shapes to Tacorian, and they discussed modifications to the design.  *Id.*; Doc. 87-3 (Tacorian Decl. at ¶ 3).  This initial heart-shaped design was labeled the HT 2228 Design.  Karounian Dep. 108:23-109:1.

---

[4] Drawings that represent each step of the design process are attached as exhibits to Karounian's Declaration.  Doc. 87-4.

Then, to create the crescent shapes of the HT 2229 Design, Karounian began to reverse the heart shapes of the HT 2228 Design by carving a v-shape part of a heart on the outer ring. Doc. 87-4 (Karounian Decl. at ¶ 8). When the solid inner ring was placed inside the carved outer ring, a solid crescent design was created next to a pierced, or open, v-shaped design. *Id.* Karounian and Tacorian both liked this crescent-shaped design and refined it by, among other things, making the ring thinner, adding a pave diamond setting to each crescent shape, and adding milligrain. *Id.* at ¶ 9; Doc. 87-3 (Tacorian Decl. at ¶ 4). This ring design, with crescents in the side of the shank of the ring, was labeled the HT 2229 Design. Doc. 87-3 (Tacorian Decl. at ¶ 5); Doc. 87-4 (Karounian Decl. at ¶ 9).

Tacorian and Karounian both state that they were jointly responsible for the creation of the HT 2229 Design. Doc. 102-12 (Tacorian Supplemental Decl. at ¶¶ 2-3); Doc. 102-13 (Karounian Supplemental Decl. at ¶¶ 2-3). They each declare that Tacorian, on behalf of Tacori, and Karounian, on behalf of Anais, were joint authors of the HT 2229 Design. *Id.*

Further, Tacorian and Karounian both state they did not base the design of the HT 2229 Design on any other ring or jewelry design. Doc. 87-3 (Tacorian Decl. at ¶ 6); Doc. 87-4 (Karounian Decl. at ¶ 11). In fact, both declare that they were unaware of any other rings that had crescents in the side of the shank of the ring at the time the HT 2229 Design was created. *Id.* Rather, Karounian writes in his Declaration that the initial inspiration of the HT 2229 Design was the result of his "lucky attempt" to reverse the heart-shaped HT 2228 Design. Doc. 87-4 (Karounian Decl. at ¶ 11).

6

### 3.    Tacori's First Sale of the HT 2229 Design

The first ring with the HT 2229 Design was ordered by Deluca Jewelers of Palm Desert, California on September 30, 1999.  Doc. 87-3 (Tacorian Decl. at ¶ 7).  Tacori shipped the order with the HT 2229 Design to Deluca Jewelers on November 16, 1999.  *Id.*

### 4.    Tacori's Copyright Registration of the HT 2229 Design in 2001

On July 31, 2001, Tacori protected the HT 2229 Design by obtaining a federal copyright registration from the United States Copyright Office.  Doc. 87-3 (Tacorian Decl. at ¶ 8).  Tacori was granted Copyright Registration No. VA 1-120-166 for the HT 2229 Design.  *Id.*  As discussed in more detail below, however, Tacori made what it refers to as four "technical" and "inadvertent" mistakes in the 2001 application that were subsequently corrected by Supplemental Registrations filed in 2003 and again in 2005.  *Id.*; Doc. 87-3 at pp. 9-12 ("2001 Certificate of Registration").  First, Tacori indicated that it was the sole author of the HT 2229 Design *via* a "work made for hire" and thereby failed to include Anais Designs, Inc. as an author.  *Id.*  Second, Tacori failed to identify that Tacorian and Karounian contributed to the design as a "work made for hire."  *Id.*  Third, Tacori failed to note that Anais Designs, Inc. transferred ownership of the copyright to Tacori by assignment.  *Id.*  And fourth, Tacori incorrectly wrote that the HT 2229 Design was completed in 2000 and first published on October 10, 2000, instead of writing that the design was actually completed in 1999 and first published on November 16, 1999.  *Id.*

### 5.    Written Assignment Agreement between Tacori and Anais Designs, Inc. in 2003

On December 23, 2003, Haig Tacorian, on behalf of Tacori, and Garo Karounian, on behalf of Anais Designs, Inc., entered into a written "Copyright Assignment Agreement For Previously Created Works."  Doc. 93-4 (the "2003 Assignment Agreement"); Doc. 109-3 (Corporate

Information for Anais Designs, Inc.).  The 2003 Assignment Agreement sought to memorialize a

previous oral agreement between Tacori and Anais.  *Id.*; Karounian Dep. 103:3-105:1; Doc. 117-2

(Karounian Second Supplemental Decl. at ¶¶ 5-7).  The 2003 Assignment Agreement stated in

relevant part:

> In consideration of past good and valuable consideration, the receipt and sufficiency of
> which is hereby acknowledged, [Anais Designs, Inc.] hereby irrevocably sells, grants,
> conveys, assigns and sets over to Tacori . . . all of [Anais Designs, Inc.'s] right, title and
> interest in and to the jewelry designs created for Tacori for usage in Tacori's business,
> including but not limited to the designs set forth in ATTACHMENT "A".

Doc. 93-4.  Attachment A identified several designs but did not include the HT 2229 Design, which

as discussed below, Karounian suggests was intended to be included but unfortunately was omitted

from the list.  *Id.*; Doc. 117-2 (Karounian Second Supplemental Decl. at ¶ 6).

Rego, however, insists that this omission of HT 2229 from Attachment A was no accident.

As noted, Rego points out in its reply memorandum that Anais Designs, Inc. was not incorporated

until May 29, 2003.  Doc. 109-3 (Corporate Information for Anais Designs, Inc.).  Consequently,

Rego concludes that the HT 2229 Design could not have been included in Attachment A of the 2003

Assignment Agreement, because:  (1) Anais Designs, Inc. did not exist when the HT 2229 Design

was allegedly created in 1999; and (2) there was no evidence that Karounian had assigned his rights

to the HT 2229 Design to Anais Designs, Inc.  In other words, Rego submits that Karounian – not

Anais Designs, Inc. – still owned the rights to the HT 2229 Design after execution of the 2003

Assignment Agreement and apparently still does today.[5]

---

[5]  As noted above, and as will be discussed below, Tacori argues that Anais Designs, Inc.
did, in fact, own the rights to the HT 2229 Design as of the date of the incorporation because it
was the successor-in-interest to Anais Fine Jewelry Mfg. and had acquired all of its assets and
liabilities.

**6.**     **Tacori's Supplemental Copyright Registration in 2003**

On December 29, 2003, six days after the 2003 Assignment Agreement was signed, Attorney Howard Kroll, on behalf of Tacori, filed a Supplementary Registration with the Copyright Office regarding its copyright for the HT 2229 Design.  Doc. 87-3 at pp. 13-16 (the "2003 Supplementary Registration").  In the 2003 Supplementary Registration, Tacori wrote that Anais Designs, Inc. was a co-author of the HT 2229 Design.  *Id.*  Tacori explained, "Anais Designs, Inc., a California corporation, was an author of the jewelry design as the contribution was a work made for hire; name and related information was accidentally omitted" from the 2001 Certificate of Registration.  *Id.* Tacori also wrote in the 2003 Supplementary Registration that Tacori obtained ownership of the copyright "by assignment" and that this "information was accidentally omitted" from the 2001 Certificate of Registration.  *Id.*

Rego, however, maintains that Tacori's 2003 Supplementary Registration was still incorrect, because Anais Designs, Inc. was not the author of the HT 2229 Design since it did not exist as of the date of authorship, and was not the owner of the HT 2229 Design because the 2003 Assignment Agreement was ineffective.  Rego also suggests that Tacori committed fraud upon the Copyright Office and the public by filing the 2003 Supplementary Registration, most notably because "Tacori deceived the Copyright Office into believing that the [2003 Assignment Agreement] had occurred no later than the time of Tacori's original filing in 2001."  Doc. 109 at 5.  Rego writes, "The recentness of the assignment was concealed from both the Copyright Office and the public that would have been searching these records," especially when Tacori was starting to file a number of lawsuits against several ring producers who were allegedly infringing Tacori's copyrighted design. *Id.*

9

**7.      Tacori's Supplemental Copyright Registration in 2005**

On August 18, 2005, Attorney Howard Kroll, on behalf of Tacori, filed another Supplementary Registration.  *Id.* at 17-18 (the "2005 Supplementary Registration").  In the 2005 Supplementary Registration, Tacori wrote that the HT 2229 Design was completed in 1999, not 2000.  *Id.*  Tacori also wrote that the first publication of the HT 2229 Design occurred on November 17, 1999, not October 10, 2000, as was written in the 2001 Certificate of Registration.  *Id.*

**8.      Amended Assignment Agreement Between Tacori and Anais Designs, Inc. in 2008**

On February 20, 2008, in the midst of briefing for the parties' cross-motions for summary judgment, Haig Tacorian, on behalf of Tacori, and Garo Karounian, on behalf of "Anais Designs, Inc., as the successor-in-interest to Anais Fine Jewelry Mfg.," entered into the "Amended Copyright Assignment Agreement For Previously Created Works."  Doc. 117-2 (the "2008 Amended Agreement").  The 2008 Amended Agreement sought to correct what Karounian describes as the inadvertent omission of the HT 2229 Design and other jewelry designs from Attachment A of the 2003 Assignment Agreement.  Doc. 117-2 (Karounian Second Supplemental Decl. at ¶ 6). Karounian declared, "It was my intent in 1999, when I agreed orally to assign the copyright of HT 2229 to Tacori, in 2003, when I signed the Copyright Assignment Agreement, and in 2008, when I signed the Amended Copyright Assignment Agreement, that Tacori would be the owner of the copyright of HT 2229."  *Id.* at ¶ 7.

**B.      Facts Related to Tacori's Trade Dress**

To date, the United States Patent and Trademark Office ("USPTO") has not granted the trademark that Tacori first requested in April 2005.  Tacori, however, does note that the USPTO has issued a Notice of Publication of the Tacori Trade Dress under 15 U.S.C. § 1062(a), and that this

10

Notice of Publication reflects that the examiner has determined that Tacori "is entitled to registration" of its trade dress.

Tacori's most recent filing with the USPTO, dated November 30, 2007, describes the trademark it seeks to register as follows:

> DESCRIPTION OF MARK:  The mark consists of the appearance of portions of two essentially concentric rings, with one of the rings having a larger diameter than the other. Embedded between the rings are repeating semi-circles or arcs which appear contiguous to each other.  A space is created between the contiguous semi-circles or arcs.  The dotted lines show the placement of the mark on the goods.

Doc. 93; *see also* Doc. 107 (Karounian Decl. at ¶ 2) (describing the "Tacori Trade Dress").

A copy of the drawing that Tacori submitted to the USPTO, depicting the mark it seeks to register and protect, is shown below:



Doc. 93.

In response to Rego's motion for summary judgment, Tacorian submitted a declaration attesting to the following in regards to the Tacori Trade Dress:

- Since 1999, Tacori has exclusively and continuously used in commerce ring designs that contain the Tacori Trade Dress.  Doc. 107 (Karounian Decl. at ¶ 2).

- Tacori's customers and interested customers recognize the Tacori Trade Dress as a source indicator for Tacori.  *Id.* at ¶ 4 (attaching copies of consumer letters and emails).

- Tacori has actively advertised the Tacori Trade Dress in the major magazines and other venues that advertise these types of goods.  *Id.* at ¶ 5.  As of February 2008, Tacori has spent approximately $6 million advertising jewelry that contains the Tacori Trade Dress.  *Id.*

- Since 1999, sales of rings that contain the Tacori Trade Dress have resulted in sales in excess of $30 million in wholesale sales to premium jewelers.  *Id.* at ¶ 6.

- Over 15,000 separate pieces of jewelry have been sold bearing the Tacori Trade Dress.  *Id.* at ¶ 7.

- Tacori has over 500 authorized dealers throughout the United States, spread throughout 48 states.  *Id.*

- There have been a number of websites that promote "Tacori Inspired" copies of Tacori's rings that bear the Tacori Trade Dress.  *Id.* at ¶ 9 (attaching representative copies).

- Tacori has identified and warned over 125 separate infringers of Tacori's ring designs that bear the Tacori Trade Dress that they must cease and desist from infringing the Tacori Trade Dress.  *Id.* at ¶ 10.  Tacori has been able to obtain consent judgments and/or admissions from most of these infringers that the Tacori Trade Dress is valid and enforceable.  *Id.*

- Tacori has received a considerable amount of unsolicited media coverage of its rings that contain the Tacori Trade Dress.  *Id.* at ¶ 11.  For example, in 2007, Tacori received the JQ Retailers' Choice Designer Award in the bridal category.  *Id.*

### III.  <u>LAW AND ANALYSIS</u>

**A.    Standard Of Review**

This case arises on cross-motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.  Rule 56(c) governs summary judgment motions and provides:

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law.

Rule 56(e) specifies the materials properly submitted in connection with a motion for summary judgment:

12

> (1) *In General*.  A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify to the  matters stated.  If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit.  The court may permit an affidavit to be supplemented or opposed by depositions, answers to interrogatories, or additional affidavits.
>
> (2) *Opposing Party's Obligation to Respond*.  When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

However, the movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *Singfield v. Akron Metropolitan Housing Auth.*, 389 F.3d 555, 560 (6th Cir. 2004).  A fact is "material" only if its resolution will affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc.*,  477 U.S. 242, 248 (1986).  Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards.  Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict."  *Id.* at 252.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on

13

which that party will bear the burden of proof at trial.  *Celotex*, 477 U.S. at 322.  Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact."  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)).  The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact.  *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992).  The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts.  *Id.*

**B.     Validity And Enforceability Of Tacori's Copyright Of The HT 2229 Design**

It is undisputed that Tacori has registered the HT 2229 Design with the United States Copyright Office and received Copyright Registration No. VA 1-120-166.  Therefore, pursuant to 17 U.S.C. § 410(c), Tacori's certificate of registration constitutes "prima facie evidence of the validity of the copyright and of the facts stated in the certificate."  Given this statutory presumption of validity, the burden of proving invalidity shifts to Rego.  *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 109 (2d Cir. 2001); *see Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 534 (6th Cir. 2004).  Rego attempts to meet its burden by primarily arguing that:  (1) the HT 2229 Design is not original and, therefore, not copyrightable; (2) Tacori has not, and still does not, possess an ownership interest in the copyright to the HT 2229 Design; and (3) assuming, *arguendo*, that Tacori now possesses an ownership interest in the copyright to the HT 2229 Design, errors in Tacori's registration nevertheless render the

copyright unenforceable.[6]  As discussed in more detail below, however, the Court concludes that

none of Rego's contentions have factual or legal merit, and that Tacori indeed owns a valid and

enforceable copyright of the HT 2229 Design.

---

[6]  The Court notes that, during litigation of this case and throughout the extensive briefing on the cross-motions for summary judgment, Rego has repeatedly changed its arguments and theories regarding Tacori's copyright of the HT 2229 Design.  **First**, on March 27, 2006, Rego responded to an initial contention interrogatory by stating that it had no intention to contest the validity of Tacori's copyrights.  **Second**, on May 18, 2006, Rego amended its response, stating that Tacori was not the first to design or introduce the rings at issue, because Beverly Jewellry of Hong Kong (one of the defendants now litigating before Judge Feess in the Central District of California) was the first to design, market, and distribute the rings in the United States.  **Third**, on March 5, 2007, after Rego admitted that the information it received from Beverly Jewellry was not reliable, Rego amended its response one final time, stating generally that Tacori was not the first to design or introduce the rings at issue, because the rings were in the public domain at the time Tacori alleges to have created them.  **Fourth**, on January 3, 2008, despite not amending its contention response, Rego raised three additional theories regarding invalidity in a memorandum in support of its motion for summary judgment and in opposition to Tacori's motion for partial summary judgment (Doc. 93):  (1) that the assignment of the copyright from Anais Designs, Inc. to Tacori in 1999 was not valid under 17 U.S.C. § 204(a), because it was not in writing until 2003; (2) that Anais Designs, Inc., not Tacori, was the sole author and owner of the HT 2229 Design; and (3) that Tacori still does not possess a valid registration of the HT 2229 Design from the Copyright Office.  **Fifth**, on February 12, 2008, Rego argued four entirely new theories in a reply memorandum in support of its motion for summary judgment (Doc. 109):  (1) that the 2003 Assignment Agreement did not transfer the copyright to Tacori, because Attachment A did not specifically list the HT 2229 Design; (2) that the 2003 Assignment Agreement did not transfer the copyright to Tacori, because Anais Designs, Inc. was not incorporated until May 2003 and therefore did not exist when the HT 2229 Design was created in 1999; (3) that Tacori committed fraud on the Copyright Office; and (4) that Tacori's 2003 Supplementary Registration was ineffective under 37 C.F.R. § 201.5(b)(2)(ii)(B) - (iii)(A).

While Tacori correctly asserts that Rego may be barred from raising any arguments that it did not include in its final amended response to Tacori's contention interrogatory, *see Wechsler v. Hunt Health Sys.*, Case No. 94 Civ. 8294 (PKL), 1999 U.S. Dist. LEXIS 13216, at *5 (S.D.N.Y. Aug. 27, 1999) (responses to contention interrogatories are treated as "judicial admissions" that estop the responding party from asserting positions omitted or different from those responses), the Court nevertheless will address Rego's varied arguments to the extent they are dispositive of the cross-motions.

### 1.    Originality

To be eligible for copyright protection, Tacori's HT 2229 Design must be original to Tacori.  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991).  "Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity."  *Id.*  "[T]he requisite level of creativity is extremely low; even a slight amount will suffice.  The vast majority of works make the grade easily, as they possess some creative spark, no matter how crude, humble or obvious it might be."  *Id.* (citation and internal quotation marks omitted).

Here, Tacori's registration certificate establishes a statutory presumption that the HT 2229 Design is original.  *See Boisson v. Banian, Ltd.*, 273 F.3d 262, 268 (2d Cir. 2001) ("Plaintiffs' certificates of registration constitute prima facie evidence of the validity not only of their copyrights, but also of the originality of their works.").  Further, Tacori has presented affirmative evidence of originality by:  (1) extensively detailing the process in which the HT 2229 Design was developed by Garo Karounian and Haig Tacorian; and (2) submitting the declarations of Karounian and Tacorian in which both declare that (a) they did not base the HT 2229 Design on any other ring or jewelry design; (b) they were not aware of any other ring design that contained crescents in the side of the shank of the ring when they developed the HT 2229 Design; and (c) they had not seen the rings and jewelry pictured in Rego's expert report prepared by Professor Stanley Lechtzin until the report was issued in July 2007.  *See* Docs. 87-3, 87-4.

Rego, on the other hand, relies entirely on the expert report of Professor Stanley Lechtzin

16

to argue that the HT 2229 Design is not original.  Professor Lechtzin generally concludes that the HT 2229 Design did not utilize any new design concepts or require any new technology for its construction; instead, he asserts that the HT 2229 Design was simply a reworking of similar and identical designs that have existed for thousands of years.  *See* Doc. 115-4 (citing five specific pieces of jewelry and noting in particular that concentric rings with one ring having a larger diameter than the other is not a new concept).  Professor Lechtzin also states, most notably, that the inspiration for Tacori's HT 2229 Design came from a bracelet designed by Saara Hopea-Untracht that was depicted in UNTRACHT OPPI, JEWELRY CONCEPTS & TECHNOLOGY (1982). Professor Lechtzin writes, "Without any stretch of the imagination, it easily appears that her jewelry was the prototype for the design that Tacori submitted to the Copyright Office.  One cannot look at this artist's work and not conclude that the Tacori rings are derivatives of the Untracht design."  Doc. 115 at 3.

The Court, however, after carefully examining all of the evidence submitted by Rego, concludes that Rego has failed to establish a genuine issue of material fact concerning the originality of Tacori's designs.  First, as noted in the California Opinion by Judge Feess, who also considered the expert report of Professor Lechtzin and reached the same conclusion as this Court, the fact that a number of jewelry designs contain similar elements or design concepts to those in the HT 2229 Design does not defeat Tacori's claim of originality:

> As the Court in *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 110 (2d Cir. 2001), noted in response to a similar argument, "[t]his showing misses the point, however: the originality in [Plaintiff's] four designs inheres in the ways [Plaintiff] has recast and arranged these constituent elements."  The same is true here; [Tacori's] design may incorporate elements previously known to and used by ring designers, but that design exhibits a look and feel different from the vast majority of evidence [the California Defendants have] presented regarding ring designs.

17

Doc. 136-6 at 3.  Originality in the copyright context merely requires "some minimal degree of creativity," *Feist Publ'ns, Inc.*, 499 U.S. at 345, and here the design of the HT 2229 Design is sufficiently different from all the jewelry designs cited in Professor Lechtzin's report, including the bracelet designed by Saara Hopea-Untracht, to conclude that the HT 2229 Design was created and developed with enough of a "creative spark" that would entitle it to copyright protection.  *See id.*  Simply stated, as pointed out by Tacori, none of the designs cited in Professor Lechtzin's report contain crescents in the side of the shank of a ring like the HT 2229 Design.

Second, and perhaps more importantly, even if the Court were to conclude that the HT 2229 Design was not sufficiently different from any of the jewelry designs cited in Professor Lechtzin's report to merit copyright protection on that basis alone, there is no evidence that Karounian or Tacorian had ever seen those pieces of jewelry prior to September 1999 or that otherwise demonstrates that they did not independently create the HT 2229 Design.[7]  *See id.* at 345-46 ("Originality does not signify novelty; a work may be original even though it closely

---

[7]  While Rego does state in passing that the book containing the picture of the bracelet designed by Saara Hopea-Untracht is "[o]ne of the standard books in the industry," Doc. 93 at 8, Rego does not point to any specific facts in the record that would show Karounian or Tacorian had seen this book, or, indeed, had seen any of the designs cited by Professor Lechtzin, as it was required to do at this stage of the litigation.  *See Street*, 886 F.2d at 1479-80; *Fulson*, 801 F. Supp. at 4.  Further, Rego does not argue that circumstantial evidence (access and substantial similarity), to the extent it is applicable in the originality context as opposed to the copying context, shows that Karounian and Tacorian copied one of the five jewelry designs cited in Professor Lechtzin's report when creating the HT 2229 Design.  *See Boisson*, 273 F.3d at 269-70 ("Scholars disagree as to whether a defendant may also rely upon circumstantial evidence to show that a plaintiff copied from the public domain."); *see also Fogerty v. MGM Group Holdings, Corp.*, 379 F.3d 348, 352-53 (6th Cir. 2004) (discussing access and substantial similarity in the copying context).  Indeed, Rego devotes relatively little factual or legal analysis to contesting the originality of the HT 2229 Design, which is telling.

resembles other works so long as the similarity is fortuitous, not the result of copying."). Instead, the evidence in the record, namely, the affirmative evidence of originality presented by Tacori and highlighted above, reveals quite the opposite – that Karounian and Tacorian independently created the HT 2229 Design.  It is worth noting, moreover, that this is the state of the record evidence after extensive opportunities for Rego to uncover contrary evidence through discovery.  As such, for this alternative reason, Karounian's and Tacorian's creation of the HT 2229 Design is original.

### 2. Ownership

Rego next contends that Tacori has not, and still to this day does not, possess an ownership interest in the copyright to the HT 2229 Design.  Instead, Rego asserts that Karounian is the true owner of the rights to the HT 2229 Design.  Rego reaches this conclusion by arguing the following:

(1) Tacorian, on behalf of Tacori, was not a co-author of the HT 2229 Design as a matter of law;

(2) Karounian, in his individual capacity, was the sole author of the HT 2229 Design, because Anais Designs, Inc. did not yet exist at the time of creation in 1999 and because he was not an employee of Tacori (and thus the HT 2229 Design was not a "work made for hire" pursuant to 17 U.S.C. § 201(b) ("In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title."));

(3) Karounian therefore became the owner of the rights to the HT 2229 Design pursuant to 17 U.S.C. § 201(a) ("Copyright in a work protected under this title vests initially in the author or authors of the work.");

(4) The 2003 Assignment Agreement between Tacori and Anais Designs, Inc. did not transfer any ownership interests in the HT 2229 Design to Tacori, because Anais Designs, Inc. did not have any ownership interests to transfer (which, Rego contends, ultimately explains why Attachment A did not specifically list the HT 2229 Design);

19

(5) Similarly, the 2008 Amended Agreement between Tacori and Anais Designs, Inc. did not transfer any ownership interests in the HT 2229 Design to Tacori, because Anais Designs, Inc. still did not have any ownership interests to transfer;

(6) Karounian has never validly transferred his ownership rights to the HT 2229 Design to Tacori or Anais Designs, Inc. by executing a written assignment in accord with 17 U.S.C. § 204(a), which states in pertinent part that "a transfer of copyright ownership . . . is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed"; and

(7) Consequently, Karounian remains, to this day, the true owner of the rights to the HT 2229 Design.

Rego's contentions as to the ownership status of the HT 2229 Design, however, are unavailing.  Even if the Court were to adopt Rego's initial premise – that Tacorian, on behalf of Tacori, was not a co-author of the HT 2229 Design as a matter of law – there is no factual or legal basis for the Court to conclude that the ownership rights to the HT 2229 Design were not validly transferred to Tacori under the Copyright Act.[8]

First, because there is no dispute that Karounian orally assigned the rights to the HT 2229

---

[8] Of course, if the Court were to conclude that Tacorian, on behalf of Tacori, was a co-author of the HT 2229 Design, Tacori clearly would have an ownership interest in the rights to the design.  *See* 17 U.S.C. § 201(a)-(b).  Despite strong evidence pointing to Tacorian's status as a co-author (including attestations from Karounian to that effect), and Judge Feess' conclusion that Tacorian was a co-author, the Court declines to address this issue.  The Court chooses this path both because Tacori can clearly establish an ownership interest to the HT 2229 Design *via* a valid assignment and because there is general uncertainty in the law as to which test should be used to determine whether an individual's contribution rises to the level of a joint authorship. *See Tang v. Putress*, 521 F. Supp. 2d 600, 605 (E.D. Mich. 2007) (noting that circuit courts utilize two competing tests – the "*de minimis*" test set forth by Professor Nimmer and the "copyrightable subject matter" test set forth by Professor Goldstein – and that the Sixth Circuit has not ruled on which test is to be applied).  Accordingly, for purposes of evaluating the cross-motions for summary judgment, the Court assumes (but again offers no decision) that Tacorian was not a co-author of the HT 2229 Design throughout the remainder of this Opinion and Order.

20

Design to Tacori at the time it was developed in 1999,[9] both on behalf of himself and of Anais

Fine Jewelry Mfg., his sole proprietorship, and because all of the parties to the oral assignment

agree that the rights to the HT 2229 Design were transferred to Tacori,[10] Rego lacks standing as

an alleged third-party infringer to challenge the validity of the assignment to Tacori in an attempt

to avoid liability.  *See, e.g.*, *Billy-Bob Teeth, Inc. v. Novelty, Inc.*, 329 F.3d 586, 592-93 (7th Cir.

2003) (reversing district court's conclusion that plaintiff did not have an ownership interest in

the copyright by holding in the alternative that the defendant, an alleged third-party infringer,

"simply [did] not have standing" to challenge the validity of an oral assignment under 17 U.S.C.

§ 204(a) where there was no dispute between the copyright owners and the plaintiff transferee);

*Imperial Residential Design, Inc. v. Palms Development Group, Inc.*, 70 F.3d 96, 99 (11th Cir.

1995) (noting that "the chief purpose of section 204(a) (like the Statute of Frauds), is to resolve

disputes between copyright owners and transferees" and concluding that "where there is no

dispute between the copyright owner and the transferee about the status of the copyright, it

would be unusual and unwarranted to permit a third-party infringer to invoke section 204(a) to

avoid suit for copyright infringement."); *Fleming v. Miles*, 181 F. Supp. 2d 1143, 1158 (D. Or.

2001) (citing *Magnuson v. Video Yesteryear*, 85 F.3d 1424 (9th Cir. 1996)) (noting that "a

--------

[9] *See* Doc. 87-3 (Tacorian Decl. at ¶¶ 2-3, 8); Doc. 87-4 (Karounian Decl. at ¶¶ 2-3); Doc. 117-2 (Karounian Second Supplemental Decl. at ¶ 7).
     Rego, as it was required to do at this stage of the litigation, does not point to any specific facts in the record that would dispute the existence of the oral agreement.  *See Street*, 886 F.2d at 1479-80; *Fulson*, 801 F. Supp. at 4.  Instead, as noted, Rego insists that there was never a written assignment pursuant to 17 U.S.C. § 204(a) that would give Tacori an ownership interest in the HT 2229 Design.

[10] The Court notes that even Anais Designs, Inc., as evidenced by the 2008 Amended Agreement and Karounian's Second Supplemental Declaration at Doc. 117-2, agrees that Tacori owns the HT 2229 Design by virtue of the 1999 oral assignment.

stranger lacks standing to assert A's alleged rights against B when A declines to assert them himself.  The defendant had no right to infringe the copyright, regardless of whether it was owned by A or B.").  Accordingly, with no legal basis to find otherwise, the Court must conclude that Tacori possesses an ownership interest in the HT 2229 Design by virtue of a valid assignment.

Second, even if Rego did have standing to challenge the validity of the assignment from Karounian, Tacori has demonstrated that the writing requirement of 17 U.S.C. § 204(a) has been satisfied, such that Tacori possesses an ownership interest in the HT 2229 Design.  As noted, section 204(a) provides in pertinent part that "a transfer of copyright ownership . . . is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed."  As the statute suggests and as numerous courts have held, an oral assignment that is later ratified or confirmed by a written memorandum is valid to transfer ownership of a copyright.  *See, e.g.*, *Billy-Bob Teeth, Inc.*, 329 F.3d at 591; *Imperial Residential Design, Inc.*, 70 F.3d at 99; *Arthur Rutenberg Homes, Inc. v. Drew Homes, Inc.*, 29 F.3d 1529, 1531-32 (11th Cir. 1994); *Rottlund Co. v. Pinnacle Corp.*, Case No. 01-1980 (DSD/SRN), 2004 U.S. Dist. LEXIS 16723, at *28 (D. Minn. Aug. 20, 2004); *X-It Prods., L.L.C. v. Walter Kidde Portable Equip., Inc.*, 155 F. Supp. 2d 577, 603-04 (E.D. Va. 2001); *Great S. Homes, Inc. v. Johnson & Thompson Realtors*, 797 F. Supp. 609, 612 (M.D. Tenn. 1992).

Again, here, it is undisputed that Karounian orally assigned the rights to the HT 2229 Design to Tacori at the time it was created in 1999.  The dispositive issue then, as hinted at above, is whether there has been a sufficient written "note or memorandum of the transfer . . . signed by the owner of the rights conveyed" under 17 U.S.C. § 204(a).

22

Tacori contends that either the 2003 Assignment Agreement or the 2008 Amended Agreement constitute a sufficient writing to satisfy the statute.  Rego, by contrast, asserts that both are ineffective, because Karounian in his individual capacity – not Anais Designs, Inc. – owned the rights to the HT 2229 Design.  The Court, however, concludes that regardless as to whether either agreement would be sufficient, Karounian's written confirmation in his Second Supplemental Declaration that he assigned the rights to the HT 2229 Design to Tacori in 1999 satisfies the writing requirement of section 204(a).  Doc. 117-2 (Karounian Second Supplemental Decl. at ¶ 7) ("It was my intent in 1999, when I agreed orally to assign the copyright of HT 2229 to Tacori, in 2003, when I signed the Copyright Assignment Agreement, and in 2008, when I signed the Amended Copyright Assignment Agreement, that Tacori would be the owner of the copyright of HT 2229.").  As the Sixth Circuit has noted, "Section 204(a)'s requirement is not unduly burdensome.  The rule is really quite simple:  If the copyright holder agrees to transfer ownership to another party, that party must get the copyright holder to sign a piece of paper saying so.  It does not have to be the Magna Carta; a one-line pro forma statement will do." *Gilleland v. Schanhals*, 55 Fed. Appx. 257, 260 (6th Cir. 2003) (quoting *Radio Television Espanola S.A. v. New World Entm't, Ltd.*, 183 F.3d 922, 927 (9th Cir. 1999).  Indeed, as the Court does here, several courts have held that writings signed even after litigation has commenced can serve to satisfy the requirements of section 204(a), including declarations.  *See, e.g.*, *Billy-Bob Teeth, Inc.*, 329 F.3d at 589-93 (holding that a *nunc pro tunc* document executed by a copyright author during trial in 2001 memorializing that he assigned the copyright as of 1996 was sufficient); *Niemi v. Am. Axle Mfg. & Holding, Inc.*, Case No. 05-74210, 2006 U.S. Dist. LEXIS 82156 (E.D. Mich. Oct. 31, 2006) (suggesting that a written memorialization

23

confirming an earlier oral assignment is proper even if signed at the time of a motion for

summary judgment); *Arthur A. Kaplan Co. v. Panaria Int'l, Inc.*, Case No. 96 Civ. 7973 (HB),

1998 U.S. Dist. LEXIS 14360, at *5-*7 (S.D.N.Y. Sept. 11, 1998) (finding that the copyright

author's declaration during litigation satisfied the writing requirement of section 204(a)), *aff'd*,

205 F.3d 1321 (2d Cir. 2000) (summary opinion); *A. Brod, Inc v. SK & I Co., L.L.C.*, 998 F.

Supp. 314, 324 (S.D.N.Y. 1998) (same).  Accordingly, for this alternative reason, the Court

concludes that there was a valid assignment of the rights to the HT 2229 Design to Tacori, and

that Tacori therefore possesses an ownership interest in the HT 2229 Design.[11]

### 3.     Validity

Having established that Tacori does possess an ownership interest in the HT 2229

Design, the Court must next consider Rego's alternative arguments that errors in Tacori's

registration render its copyright invalid and unenforceable.

#### a.     Standing

Rego's primary alternative argument is that, even if Tacori now possesses an ownership

interest in the HT 2229 Design, Tacori lacked standing as a non-owner to register the HT 2229

Design under 17 U.S.C. § 408(a) when it filed its initial or basic registration application with the

---

[11]  The Court notes, moreover, that Rego does not dispute Karounian's claim that Anais existed as a sole proprietorship long before its incorporation, that Karounian had the right to take actions (including oral assignments) on behalf of that sole proprietorship, or that the assets and liabilities of that entity were transferred to Anais Designs, Inc. as its successor-in-interest. Indeed, Rego does not even address these facts or their obvious significance to the "effectiveness" of either the 2003 or 2008 assignments.  Because the Court bases its conclusions as to the question of ownership on the existence of an undisputed oral assignment by Karounian, followed by a "writing" submitted to this Court, the Court declines to further address the validity of the 2003 and 2008 written assignments.

Copyright Office in July 2001.[12]  Further, Rego contends that Tacori's supplementary

registrations do not remedy that defect, because corrections as to ownership after the basic

registration is filed are inappropriate under 37 C.F.R. § 201.5(b)(2)(iii)(A).[13]  Therefore, Rego

concludes that Tacori's certificate of registration is invalid, and that Tacori cannot maintain an

action for infringement under 17 U.S.C. § 411(a).[14]

      Rego, however, is again mistaken.  The same cases that have held that an oral assignment

may be confirmed later in writing to satisfy the requirements of 17 U.S.C. § 204(a) also hold that

---

[12]  Section 408(a) provides:

At any time during the subsistence of the first term of copyright in any published or
unpublished work in which the copyright was secured before January 1, 1978, and during
the subsistence of any copyright secured on or after that date, the owner of copyright or
of any exclusive right in the work may obtain registration of the copyright claim by
delivering to the Copyright Office the deposit specified by this section, together with the
application and fee specified by sections 409 and 708. Such registration is not a condition
of copyright protection.

17 U.S.C. § 408(a).


[13]  37 C.F.R. § 201.5(b)(2)(iii) provides in part:

Supplementary registration is not appropriate:

    (A) As an amplification, to reflect a change in ownership that occurred on or after the
    effective date of the basic registration or to reflect the division, allocation, licensing
    or transfer of rights in a work . . . .

[14]  Section 411(a) provides in part:

Except for an action brought for a violation of the rights of the author under section
106A(a), and subject to the provisions of subsection (b), no action for infringement of the
copyright in any United States work shall be instituted until preregistration or registration
of the copyright claim has been made in accordance with this title . . . .

17 U.S.C. § 411(a).

25

the copyright owner's later execution of the writing confirming the earlier oral assignment validates the transfer *ab initio*.  *See, e.g.*, *Billy-Bob Teeth, Inc.*, 329 F.3d at 591; *Imperial Residential Design, Inc.*, 70 F.3d at 99; *Arthur Rutenberg Homes, Inc.*, 29 F.3d at 1533; *Rottlund Co.*, 2004 U.S. Dist. LEXIS 16723, at *37-*38; *X-It Prods., L.L.C.*, 155 F. Supp. 2d at 603-08; *Great S. Homes, Inc.*, 797 F. Supp. at 612 (citing 3 *Nimmer on Copyright* § 10.03[A]).  Consequently, the written confirmation in Karounian's Second Supplemental Declaration (and arguably the written confirmations in the 2003 Assignment Agreement and 2008 Amended Agreement) that he orally assigned the rights to the HT 2229 Design to Tacori in 1999 effectuates the transfer of ownership to Tacori *as of 1999*.  Tacori's registration of the HT 2229 Design in July 2001 therefore was valid and proper under 17 U.S.C. § 408(a) and a sufficient basis for Tacori to bring this suit against Rego.

Further, Rego mistakenly relies on *Schiller & Schmidt, Inc. v. Nordisco Corp.*, 969 F.2d 410 (7th Cir. 1992); *Morgan, Inc. v. White Rock Distilleries, Inc.*, 230 F. Supp. 2d 104 (D. Me. 2002); and *Rubloff Inc. v. Donahue*, Case No. 93 C 0457, 1994 U.S. Dist. LEXIS 4657 (N.D. Ill. April 13, 1994).  Each of these cases is easily distinguishable – unlike Tacori here, none of the plaintiffs asserted an ownership claim based, either in whole or in part, on an oral assignment of the copyright *prior* to the basic registration application that was later confirmed in writing pursuant to 17 U.S.C. § 204(a).  Instead, in each of these cases, the plaintiffs asserted ownership claims that were either erroneously based on the "work made for hire" doctrine (in which case the plaintiff would not possess an ownership interest at all) and/or based on a written assignment of the copyright *subsequent* to the basic registration application where there was no indication of a prior oral assignment (in which case the plaintiff would possess an ownership interest, but not

as of the time of the basic registration).  Consequently, in those cases, the courts held that the

plaintiffs' basic registrations were invalid, because *they did not possess an ownership interest*

*when they filed their basic registrations* and a supplementary registration to *correct* a *change* in

ownership is prohibited under 37 C.F.R. § 201.5(b)(2)(iii)(A).[15]

By contrast, as established above, Tacori possessed an ownership interest in the HT 2229

Design as of 1999 by virtue of the oral assignment from Karounian that was later confirmed in

---

[15]  For example, in *Rubloff Inc.*, the plaintiff corporation sought and received a certificate of registration in March 1990 for the copyright of a manual by invoking the "work made for hire" doctrine.  1994 U.S. Dist. LEXIS 4657, at *2.  In reality, however, the plaintiff corporation did not own the copyright under the "work made for hire" doctrine, as the two authors of the manual were independent contractors and there was no written agreement expressly providing that the manual was to be a "work made for hire" as required under 17 U.S.C. § 101.  *Rubloff Inc.*, 1994 U.S. Dist. LEXIS 4657, at *6-*7.  Further, the court noted that neither of the two authors agreed that their work on the manual would be considered a "work made for hire."  *Id.* at *2.  Therefore, as of the time the plaintiff corporation filed its basic registration in March 1990, (1) the plaintiff corporation did not possess an ownership interest in the copyright by virtue of the "work made for hire" doctrine; and (2) there was no indication that the two authors had orally assigned their copyright of the manual to the plaintiff corporation (in fact, the opinion suggests the opposite).  Moreover, as of March 1990, the authors would have owned the rights to the manual, and the plaintiff corporation would not have had standing as a non-owner of the copyright to file a registration application.  Consequently, as the Court recognized, the plaintiff corporation's March 1990 registration certificate was invalid.  *See id.* at *17-*18.

Then, in a first attempt to remedy this failing, the plaintiff corporation noted that it obtained an assignment from one of the authors in July 1993 and argued that this assignment satisfied the "work made for hire" requirements, thereby rendering the plaintiff corporation the owner of the manual.  *Id.* at *7-*10.  The court, citing *Schiller & Schmidt, Inc.*, disagreed with the plaintiff corporation and held that the assignment did not satisfy the "work made for hire" requirements.  *Rubloff Inc.*, 1994 U.S. Dist. LEXIS, at *7-*10.

And finally, in a last attempt to survive summary judgment, the plaintiff corporation argued that the July 1993 assignment and an August 1993 supplemental registration identifying the July 1993 assignment and listing the two independent contractors as "co-authors" allowed it to file suit against the defendant.  *Id.* at *17-*18.  The court, however, again disagreed with the plaintiff corporation, noting that the August 1993 supplemental registration was not effective, because "supplementary registration 'is not appropriate . . . as an amplification, to reflect the . . . transfer of rights in a work, whether at the time basic registration was made or thereafter.'" *Id.* at *18 (quoting 37 C.F.R. § 201.5(b)(2)(iii)).  Consequently, the plaintiff corporation's March 1990 registration remained invalid, and without a valid copyright registration, defendants were entitled to summary judgment.  *Id.*

writing in satisfaction of 17 U.S.C. § 204(a).  Therefore, *Tacori possessed an ownership interest when it filed its basic registration* in July 2001 and its supplementary registrations did not *correct* a *change* in ownership in contravention of  37 C.F.R. § 201.5(b)(2)(iii)(A), but merely corrected information as to *how* it was an owner.  *See Shady Records, Inc. v. Source Enters., Inc.*, Case No. 03 Civ. 9944 (GEL), 2004 U.S. Dist. LEXIS 26143, at *32 (S.D.N.Y. Jan. 3, 2005) ("[T]he supplementary registration corrected information as to how they were owners (*i.e.*, by assignment, rather than through the 'work for hire' doctrine), but did not contain a correction as to the fact of ownership itself, and did not violate the Copyright Office's supplementary registration procedures.").

     In this regard, the Eleventh Circuit's decision in *Arthur Rutenberg Homes, Inc.* is particularly instructive.  There, the Eleventh Circuit reversed a district court's order, holding that an initial basic copyright registration that identified the registrant as the author for an inaccurate rationale under the "work made for hire" doctrine was still enforceable where the actual author had orally assigned the copyright prior to the registration and then later, after the registration, executed a written memorialization in accord with 17 U.S.C. § 204(a).  29 F.3d at 1532-33.  The court first noted that the oral assignment of the copyright from the actual author to the registrant prior to the registration conveyed at least a "contractual right" to the copyright.  *Id.* at 1530-31.  As such, the court concluded that under 37 C.F.R. § 202.3(a)(3)(ii) n.1, the registrant was a proper claimant and its registration was valid.  *Id.* at 1532-33 (citing *Dan-Dee Imports, Inc. v. Well-Made Toy Mfg. Corp.*, 524 F Supp. 615, 618-19 (E.D.N.Y. 1981)).  Moreover, the court noted that this conclusion was consistent with those cases holding that a copyright owner's later execution of a writing that confirmed an earlier oral assignment validated the transfer *ab initio*.

28

*Id.* at 1533 (citing *Great S. Homes, Inc.*, 797 F. Supp. at 612).  Therefore, the court determined that the registrant was not required to have written evidence of the assignment from the actual author "as a prerequisite to application for and the issuance of a valid copyright registration." *Id.*; *accord Billy-Bob Teeth, Inc.*, 329 F.3d at 589-93 (holding that a corporation's registration was valid where there was an oral transfer of the copyright to the corporation in 1996, the corporation registered the copyright in 1999 inaccurately as a "work made for hire," and the actual author executed a *nunc pro tunc* written assignment during the trial in 2001).

Accordingly, given the foregoing, the Court concludes here that, while the assignment and registration process certainly could have been more linear, Tacori did not lack standing to register the HT 2229 Design under 17 U.S.C. § 408(a) when it filed its initial or basic registration application with the Copyright Office in July 2001.

### b.    Fraud

Rego's second argument regarding the errors in Tacori's registration – that Tacori committed fraud on the Copyright Office – also is not well-taken.  Here, Rego claims that Tacori made fraudulent misrepresentations in its initial or basic registration application, by falsely claiming that it was the owner of the design, when it was neither the author, nor yet an assignee of the work.  Further, Rego alleges that Tacori made fraudulent misrepresentations in its 2003 Supplementary Registration, by deliberately concealing the fact that Tacori had only obtained an assignment six days earlier, ostensibly because Tacori at that time was engaged in infringement litigation with jewelers across the country.

While the affirmative defense of fraud can serve as a basis to rebut the presumption of validity attached to a copyright registration certificate, the "party seeking to establish a fraud on

29

the Copyright Office, and thereby rebut the presumption of copyright validity, bears a *heavy burden*." *Lennon v. Seaman*, 84 F. Supp. 2d 522, 525 (S.D.N.Y. 2000) (citing 2 *Nimmer on Copyright* § 7.20[B]) (emphasis added).  "The party asserting the fraud must establish that the application for copyright registration is factually inaccurate, that the inaccuracies were willful or deliberate, and that the Copyright Office relied on those misrepresentations."  *Shady Records, Inc.*, 2004 U.S. Dist. LEXIS 26143, at *28 (quoting *Lennon*, 84 F. Supp. 2d at 525).  "Neither innocent misstatements, nor deliberate, but nonmaterial misstatements, will overcome the presumption of validity."  *Id.*; *see Advisers, Inc. v. Wiesen-Hart, Inc.*, 238 F.2d 706, 708 (6th Cir. 1956) ("[A]n innocent misstatement, or a clerical error, in the affidavit and certificate of registration, unaccompanied by fraud or intent to extend the statutory period of copyright protection, does not invalidate the copyright, nor is it thereby rendered incapable of supporting an infringement action.").  Material misstatements in a copyright registration application "are those which go toward the registrability of the materials themselves, such as originality . . . the nature of materials to be copyrighted . . . and contested claims of authorship and ownership." *Shady Records, Inc.*, 2004 U.S. Dist. LEXIS 26143, at *35 (citations omitted); *see Eckes v. Card Prices Update*, 736 F.2d 859, 861-62 (2d Cir. 1984) ("Only the knowing failure to advise the Copyright Office of facts which might have occasioned a rejection of the application constitute reason for holding the registration invalid and thus incapable of supporting an infringement action . . . or denying enforcement on the ground of unclean hands . . . .") (internal quotations omitted).

The Court, upon evaluating Rego's fraud arguments, concludes that Rego did not meet its "heavy burden" for three independent reasons.  *See Lennon*, 84 F. Supp. 2d at 525.  First, as

pointed out by Tacori, Rego never alleged that Tacori committed fraud on the Copyright Office in any of its affirmative defenses.  *See* Doc. 50 ("Defendant's Third Amended Answer to the Plaintiff's Complaint").[16]  Second, even if Rego had properly asserted fraud as an affirmative defense, Rego provides no *evidence* of fraudulent intent; instead, Rego relies solely on unsupported allegations and mere speculation and, as Tacori suggests, innuendo and personal attacks on counsel for Tacori.  And third, Rego has not shown that Tacori made any material misstatements or omissions to the Copyright Office.  Although Rego attempts to show that the Copyright Office would have denied Tacori's application but for Tacori's misstatements in its registration statements regarding authorship and ownership – in particular, the "work made for hire" designation in Tacori's 2001 application and the reference to the assignment in the 2003 Supplementary Registration – the Court has previously found that, given the oral assignment from Karounian in 1999, Tacori was an owner of the HT 2229 Design at the time it sought registration of the copyright in July 2001.  Therefore, because there are no actual contested claims of authorship and ownership, Rego cannot claim that Tacori made any *material* misrepresentations to the Copyright Office.  *See Shady Records, Inc.*, 2004 U.S. Dist. LEXIS 26143, at *28-*32 (finding that there were "no alleged omissions or misstatements to evaluate for fraudulent intent" because the plaintiff "was indeed an owner of copyright interests in 'Oh Foolish Pride' at the time of the basic registration, by virtue of Michael Ruby's assignment of his interests"); *Rottlund Co.*, 2004 U.S. Dist. LEXIS 16723, at *39-*46 (finding no fraud because the plaintiff was the owner of the copyrights at issue by assignment; "[t]hus, the allegedly

---

[16]  Tacori also notes that Rego never asserted fraud in any of its responses to contention interrogatories.

31

erroneous work for hire designation is immaterial and caused no prejudice to Defendants").[17]

Accordingly, the Court concludes that Tacori did not commit fraud on the Copyright Office, and that Tacori's certificate of registration is valid.[18]

\* \* \*

For all of the foregoing reasons, the Court concludes that Tacori holds a valid and enforceable copyright in the HT 2229 Design.  Tacori's motion for partial summary judgment is **<u>GRANTED</u>**.  Rego's motion for summary judgment as to Tacori's copyright claims is **<u>DENIED</u>**.

## C.     Tacori's Trade Dress Infringement Claim

Rego also has moved for summary judgment on Tacori's federal trade dress infringement claim, arguing that Tacori does not possess a recognizable trademark upon which Rego has infringed.  This aspect of Rego's motion, which is almost completely devoid of any factual or legal support whatsoever, warrants only brief comment and, for the reasons below, will be denied.

First, it is well-settled that, under Rule 56(c) of the Federal Rules of Civil Procedure, a

---

[17]  In this regard, the Court also notes that if listing Anais Designs, Inc., instead of Karounian, as a co-author of the HT 2229 Design in the 2003 Supplementary Registration was an error (which the Court does not decide in this Opinion and Order, because it need not reach the issue), such an error would not be considered a material misrepresentation.  *See Shady Records, Inc.*, 2004 U.S. Dist. LEXIS 26143, at \*36 ("If failure to include all co-authors were material to disposition of the registration, the Copyright Office would invalidate, rather than permit amplification of registrations suffering such omissions.").

[18]  While this Court has chosen not to address the issue, it is notable that Judge Feess rejected a similar fraud claim against Tacori because he found that Karounian had developed the rings on behalf of Anais Fine Jewelry Mfg. and that the rights of that sole proprietorship were duly transferred to Anais Designs, Inc., whose interests in the HT 2229 Design were then conveyed to Tacori.  (Doc. 136-6 at 5.)

party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact.  *Celotex Corp.*, 477 U.S. at 323.  Here, Rego does not set forth the legal basis for its motion.  Instead, Rego cites two cases standing for the proposition that the USPTO's decision to reject Tacori's trademark application was correct and then states in conclusory fashion, without any legal support, that "[a]s Tacori does not possess a recognizable or registered trademark, there can be no trademark infringement on the part of Rego."  Doc. 93 at 21-22.  Without a proper understanding of the legal bases upon which Rego relies, the Court cannot properly evaluate Rego's motion, and it should be denied summarily. Therefore, the Court first concludes that Rego has not made a prima facie showing that summary judgment is appropriate on Tacori's trade dress infringement claim.

Moreover, as far as the Court can discern, Rego possibly could be seeking summary judgment on two grounds:  (1) that Tacori cannot pursue an action for trade dress infringement, because Tacori does not have a federal trademark registration; and (2) that the Tacori Trade Dress is not distinctive.  Neither ground, however, would entitle Rego to summary judgment.

First, Tacori can bring an action for trade dress infringement, despite not having a federal trademark registration.  *See* 15 U.S.C. § 1125(a)(1); *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992) ("[I]t is common ground that § 43(a) protects qualifying unregistered trademarks."); *Tumblebus, Inc. v. Cranmer*, 399 F.3d 754, 760-61 (6th Cir. 2005) ("Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides a federal cause of action for infringement of marks and trade dress that have not obtained federal registration.").

Second, there are genuine issues of material fact as to whether the Tacori Trade Dress is

33

distinctive.  Whether a trade dress is distinctive in the marketplace and has acquired "secondary meaning" is one of three elements that a party seeking to recover for trade dress infringement must prove by a preponderance of the evidence.  *See GMC v. Lanard Toys, Inc.*, 468 F.3d 405, 414-15 (6th Cir. 2006) (citing *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 210 (2000)) ("A party seeking to recover for trade dress infringement must prove by a preponderance of the evidence that:  (1) the trade dress is not functional; (2) the trade dress is distinctive in the marketplace and has acquired 'secondary meaning,' thereby indicating the source of the goods; and (3) the trade dress of the accused product is confusingly similar.").  "To demonstrate secondary meaning, the evidence must show that in the minds of the public, the primary significance of the trade dress is to identify the source of the product rather than the product itself." *Id.* at 418 (internal quotations omitted).  The Sixth Circuit applies a seven-factor test to determine whether secondary meaning exists in a trade dress:  (1) direct consumer testimony; (2) consumer surveys; (3) exclusivity, length, and manner of use; (4) amount and manner of advertising; (5) amount of sales and number of customers; (6) established place in the market; and (7) proof of intentional copying.  *Id.*

Rego, which did not discuss any of the foregoing law, let alone cite a single case on the issue of distinctiveness, argues that there is no evidence that the consuming public recognizes the HT 2229 Design as a mark exclusive to Tacori, and that by Tacorian's own admission, there were at least a hundred or so other manufacturers selling that particular design.  Tacori, however, meets its burden of establishing that there are genuine issues of material fact regarding secondary meaning by submitting Tacorian's affidavit.  Tacorian's affidavit shows that several of the seven factors weigh in favor of finding that the Tacori Trade Dress has acquired distinctiveness – or at

34

least establish a genuine issue of material fact on those points.  For example, under the exclusivity, length, and manner of use factor, Tacori has continuously used its trade dress in commerce since 1999 and has sent over 125 cease and desist letters in an attempt to ensure that its trade dress is exclusive to Tacori.  Under the amount and manner of advertising factor, Tacori has actively advertised the Tacori Trade Dress in the major magazines and other venues that advertise jewelry, spending approximately $6 million advertising jewelry that contains the Tacori Trade Dress.  Under the amount of sales and number of customers factor, Tacori has sold over 15,000 separate pieces of jewelry bearing the Tacori Trade Dress, with sales in excess of $30 million in wholesale sales to premium jewelers.  Under the established place in the market factor, Tacori sells jewelry bearing the Tacori Trade Dress to over 500 authorized dealers throughout the United States spread throughout 48 states.  And under the proof of intentional copying factor, Tacori submits that there have been a number of websites that promote "Tacori Inspired" copies of Tacori's rings that bear the Tacori Trade Dress and notes again that it has identified and warned over 125 separate infringers of jewelry that bear the Tacori Trade Dress that they must cease and desist from infringing the Tacori Trade Dress.  In short, after considering the arguments presented by the parties and the relevant evidence, the Court concludes that summary judgment on this issue is inappropriate.  *See Libbey Glass, Inc. v. Oneida Ltd.*, 61 F. Supp. 2d 700, 707-09 (N.D. Ohio 1999) ("Because I am unable to determine conclusively whether distributors and end-users associate Libbey's trade dress only with Libbey, there is a genuine issue of material fact about whether the dress has secondary meaning.").

In light of the above, the Court concludes that Rego's motion for summary judgment on Tacori's trade dress infringement claim is **<u>DENIED</u>**.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, the Court concludes that Tacori's motion for partial summary judgment is **<u>GRANTED</u>**, and Defendant Rego Manufacturing's motion for summary judgment is **<u>DENIED</u>**.

**IT IS SO ORDERED.**

*s/ Kathleen M. O'Malley*
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated:  September 25, 2008**

36